**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| TAIWAN SEMICONDUCTOR MANUFACTURING COMPANY LIMITED, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | C.A. No. 22-cv-1647-MN-JLH |
| DAEDALUS PRIME LLC AND INTEL CORP., | ) ) ) | ███████████ |
| Defendants. | ) | |

## PLAINTIFF TAIWAN SEMICONDUCTOR MANUFACTURING COMPANY LIMITED'S OPPOSITION TO DEFENDANT DAEDALUS PRIME LLC'S MOTION TO DISMISS OR, IN THE ALTERNATIVE, STAY PROCEEDINGS

**TABLE OF CONTENTS**

I.      INTRODUCTION .................................................................................................... 1

II.     SUMMARY OF ARGUMENT ............................................................................... 2

III.    BACKGROUND ...................................................................................................... 3

        A.      Parties ............................................................................................................ 3

        B.      Nature of the ITC Investigation ................................................................... 3

        C.      Highlights of the ███ Agreement ................................................................ 4

        D.      Intel's and Daedalus's Representations about Patent Ownership .......................... 5

        E.      Differences Between the ITC Investigation, the Texas Litigation, and This
                Action ............................................................................................................ 6

        F.      Importance of Intel's Participation in This Action ....................................... 7

IV.     LEGAL STANDARD .............................................................................................. 7

        A.      First-to-File Rule .......................................................................................... 7

        B.      Discretionary Stay ........................................................................................ 9

        C.      Case and Controversy ................................................................................... 9

V.      ARGUMENT ......................................................................................................... 11

        A.      The Court Should Not Dismiss or Stay This Action Because the First-to-
                File Rule Does Not Apply ........................................................................... 11

                1)      The first-to-file rule does not apply because this action is not
                        identical or nearly identical to Daedalus's cases. ..................................... 11

                        a)      This case involves different parties ............................................ 11

                        b)      The cases involve different issues ............................................. 13

                2)      This action should proceed irrespective of the first-to-file rule
                        because the ███ Agreement ████████████████████████████
                        ███████████████████████████ because permitting this action to
                        continue would improve, not impair, judicial efficiency. ........................ 14

        B.      The Court Should Not Exercise Its Discretion to Stay Because Doing So
                Would Prejudice TSMC, Declining to Stay Would Not Prejudice
                Daedalus, and a Stay Will Not Simplify the Issues ............................................ 16

        C.      This Action Presents a Justiciable Controversy about the ███ Agreement,
                Because Daedalus and Intel Have Argued It Does Not Cover the
                Transferred Patents ..................................................................................... 18

VI.     CONCLUSION ...................................................................................................... 20

ME1 44371036v.1

**TABLE OF AUTHORITIES**

**Cases**

*Aetna Life Insurance Co. v. Haworth*,
  300 U.S. 227 (1937) ................................................................................. 10, 19, 20

*Alloc, Inc. v. Unilin Decor N.V.*,
  No. 03-253-GMS, 2003 WL 21640372 (D. Del. July 11, 2003) ................................................ 9

*Amgen Inc. v. Amneal Pharmaceuticals LLC*,
  No. 16-853-MSG, 2019 WL 4538135 (D. Del. Sept. 19, 2019).............................................. 20

*APV North America, Inc. v. Sig Simonazzi North America, Inc.*,
  295 F. Supp. 2d 393 (D. Del. 2002).................................................................................. 11, 13

*Arris Group, Inc. v. British Telecommunications PLC*,
  639 F.3d 1368 (Fed. Cir. 2011) ................................................................................. 10

*Atlantic Marine Construction Co. v. U.S. District Court for Western District of Texas*,
  571 U.S. 49 (2013)................................................................................. 8, 14, 16

*Capo, Inc. v. Dioptics Medical Products, Inc.*,
  387 F.3d 1352 (Fed. Cir. 2004) ................................................................................. 10

*Chemetall US Inc. v. Laflamme*,
  No. 16-780 (JLL), 2016 WL 1162751 (D.N.J. Mar. 24, 2016) ........................................... 8, 14

*Ciena Corp. v. Nortel Networks Inc.*,
  No. 2:05 CV 14, 2005 WL 1189881 (E.D. Tex. May 19, 2005) ............................................ 16

*Communications Test Design, Inc. v. Contec, LLC*,
  952 F.3d 1356 (Fed. Cir. 2020) ................................................................................. 8

*Cooper Notification, Inc. v. Twitter, Inc.*,
  No. 09-865-LPS, 2010 WL 5149351 (D. Del. Dec. 13, 2010) ........................................... 9, 16

*CRU Acquisition Group, LLC v. Mykey Technology Inc.*,
  No. 3:11-CV-05743-RBL, 2012 WL 441293 (W.D. Wash. Feb. 10, 2012) ........................... 11

*DePuy Synthes Sales, Inc. v. Edwards*,
  23 F. Supp. 3d 472 (E.D. Pa. 2014).................................................................................. 8, 14

*eBay, Inc. v. MercExchange, L.L.C.*,
  547 U.S. 388 (2006)................................................................................. 3

*Electronics for Imaging, Inc. v. Coyle*,
  394 F.3d 1341 (Fed. Cir. 2005) ................................................................................. 8, 15

*Elpida Memory, Inc. v. Intellectual Ventures I LLC*,
  No. 11-623-SLR, 2012 WL 3728607 (D. Del. Aug. 28, 2012) ......................................... 11, 13

*EMC Corp. v. Norand Corp.*,
  89 F.3d 807 (Fed. Cir. 1996) ..................................................................................... 10

*Genentech, Inc. v. Eli Lilly & Co.*,
  998 F.2d 931 (Fed. Cir. 1993) ................................................................................... 15

*General Protecht Group, Inc. v. Leviton Manufacturing Co.*,
  No. 10-1020 JB/LFG, 2010 WL 5559750 (D.N.M. Nov. 30, 2010), *order clarified by*
  2010 WL 5477266 (D.N.M. Dec. 7, 2010) .................................................................. 16

*Gordian Medical, Inc. v. Vaughn*,
  No. 22-319-MN-SRF, 2022 WL 16646626 (D. Del. Nov. 3, 2022), *report and
  recommendation adopted by* 2022 WL 17084125 (D. Del. Nov. 18, 2022) .................... 8, 14

*In re Mobile Telecommunications Technologies, LLC*,
  243 F. Supp. 3d 478 (D. Del. 2017) ..................................................................... 8, 12, 13

*In re Spansion Inc.*,
  Nos. 10-252 (RBK), 10-554(RBK), 2011 WL 3268084 (D. Del. July 28, 2011),
  *aff'd*, 507 F. App'x 125 (3d Cir. 2012) ...................................................................... 15

*In re Telebrands Corp.*,
  773 F. App'x 600 (Fed. Cir. 2016) ............................................................................. 11

*Kerotest Manufacturing Co. v. C-O-Two Fire Equipment Co.*,
  342 U.S. 180 (1952) .................................................................................................... 8

*Landis v. North American Co.*,
  299 U.S. 248 (1936) .................................................................................................... 9

*MedImmune, Inc. v. Genentech, Inc.*,
  549 U.S. 118 (2007) ........................................................................................... 9, 10, 19

*Merial Ltd. v. Cipla Ltd.*,
  681 F.3d 1283 (Fed. Cir. 2012) ........................................................................... passim

*Nexon America Inc. v. Uniloc 2017 LLC*,
  No. 19-1096-CFC, 2020 WL 3035647 (D. Del. June 5, 2020) ..................................... 12

*Powertech Technology Inc. v. Tessera, Inc.*,
  660 F.3d 1301 (Fed. Cir. 2011) ................................................................................. 19

*Public Affairs Associates, Inc. v. Rickover*,
  369 U.S. 111 (1962) .................................................................................................. 10

iii

*Rite Aid Hdqtrs Corp. v. Nest International*,
    No. 18-4659, 2019 WL 9100331 (E.D. Pa. Mar. 13, 2019) ................................................. 13

*Samuel T. Freeman & Co. v. Hiam*,
    No. 12-1387, 2012 WL 2120474 (E.D. Pa. June 11, 2012)........................................ 15

*Samuels v. Medytox Solutions, Inc.*,
    No. 13-7212 (SDW), 2014 WL 4441943 (D.N.J. Sept. 8, 2014) ............................. 8, 14

*SanDisk Corp. v. STMicroelectronics, Inc.*,
    480 F.3d 1372 (Fed. Cir. 2007) ................................................................................ 19

*Stewart Org., Inc. v. Ricoh Corp.*,
    487 U.S. 22 (1988)..................................................................................................... 16

*Tabletop Media, LLC v. AMI Entertainment Network, LLC*,
    No. 16-1121-RGA-MPT, 2017 WL 4511351 (D. Del. Oct. 10, 2017)), *report and
    recommendation adopted by* 2017 WL 4897526 (D. Del. Oct. 30, 2017).................... 20

*Texas Instruments Inc. v. Cypress Semiconductor Corp.*,
    90 F.3d 1558 (Fed. Cir. 1996) .................................................................................. 15

*Verint Americas Inc. v. Fornell*,
    No. 1:21-cv-00674-SB-SRF, 2022 WL 4079180 (D. Del. Sept. 6, 2022).......... 8, 12, 14

*Xerox Corp. v. 3Com Corp.*,
    69 F. Supp. 2d 404 (W.D.N.Y. 1999) ......................................................................... 9

*Zenith Electronics LLC v. Sony Corp.*,
    No. C 11-02439 WHA, 2011 WL 2982377 (N.D. Cal. July 22, 2011) ................... 4, 17

**Statutes**

19 U.S.C. § 1333(b) .............................................................................................................. 4

19 U.S.C. § 1337(e)(1)....................................................................................................... 3, 4

28 U.S.C. § 1659 ................................................................................................................. 18

28 U.S.C. § 2201(a) .............................................................................................................. 9

**Regulations**

19 C.F.R. § 210.14(a)................................................................................................... 4, 12, 15

19 C.F.R. § 210.32(g) ........................................................................................................... 4

37 C.F.R. § 1.4(d)(4).............................................................................................................. 5

iv

37 C.F.R. § 11.18(b) ................................................................................................................ 5

**Constitutional Provisions**

U.S. Const. art. III ................................................................................................................. 9

ME1 44371036v.1

# TABLE OF EXHIBITS

| Exhibit Number | Description |
| --- | --- |
| 1 | Exemplary statements showing ownership under 37 C.F.R. § 3.73(c) filed with the USPTO by Daedalus Prime LLC |
| 2 | Complainant's Reply to TSMC's Request for 100-Day Proceeding, *Certain Semiconductor Devices, Mobile Devices Containing the Same, and Components Thereof*, Inv. No. 337-TA-1336 (Sept. 30, 2022) (Doc. ID 781569) |
| 3 | Proposed Respondents' Taiwan Semiconductor Manufacturing Company Limited's and TSMC North America's ("TSMC") Statement Regarding the Public Interest, *Certain Semiconductor Devices, Mobile Devices Containing the Same, and Components Thereof*, Inv. No. 337-TA-1336 (Sept. 27, 2022) (Doc. ID 781144) |
| 4 | Emails between J. Liu and F. Yu (Sept. 13-15, 2022) (Filed Under Seal) |
| 5 | Letter from M. Renaud to TSMC (Sept. 9, 2022) |
| 6 | TSMC Annual Report 2021 (Mar. 12, 2022) |
| 7 | *TSMC Recognized with 2021 IEEE Corporate Innovation Award* (Dec. 9, 2020) |

ME1 44371036v.1

# I.    INTRODUCTION

This action requires the Court to consider and enforce contracts signed by Defendant Intel Corporation, including a May 2022 ███████████████████████████████████ Agreement ("█████ Agreement") between Intel and Plaintiff Taiwan Semiconductor Manufacturing Company Limited ("TSMC"), an April 2021 Agreement between Intel and Defendant Daedalus Prime LLC, and a June 2022 Patent Assignment Agreement from Intel to Daedalus.[1] To confirm TSMC's rights under the ████ Agreement, the essential question is whether Intel transferred to Daedalus certain patents subject to the ██████████████ Agreement ("Transferred Patents") (a) via the June 2022 Assignment Daedalus recorded at the USPTO, or (b) in April 2021, as Intel and Daedalus now claim contrary to their undisputed statements in that June 2022 Assignment, manifold USPTO filings between April 2021 and June 2022, and Daedalus's verified allegations in its International Trade Commission ("ITC") complaint.

Daedalus is a party to this lawsuit because TSMC needs protection from Daedalus's suits at the ITC and in the Eastern District of Texas alleging infringement of four Transferred Patents. But Intel's statements and the contracts it signed are key to determining TSMC's rights. Intel is not a party to Daedalus's suits. Moreover, this action involves patents not at issue in either of Daedalus's suits, for which the parties similarly dispute TSMC's license rights.

TSMC asks the Court to deny Daedalus's motion to dismiss or stay this case because the first-to-file rule does not apply, there is no basis for a discretionary stay, and the parties have a justiciable controversy with respect to the Transferred Patents.

---

[1] In the June 2022 Assignment, Intel and Daedalus described the April 2021 Agreement as one "pursuant to which, among other things, [Intel] has agreed to transfer to [Daedalus] the Assigned Assets." *See* D.I. 4, Ex. B at 0606.

## II.     SUMMARY OF ARGUMENT

The Court should not dismiss or stay this action under the first-to-file rule because that rule only applies to identical or nearly identical actions, and this action involves different parties, different patents, and different issues from Daedalus's ITC and Texas suits. Intel, for example, is a party to this action but not to those lawsuits. This action also addresses TSMC's rights in forty-six Transferred Patents, but Daedalus's suits involve only four. This action presents limited contract issues, but the ITC and Texas suits raise questions of invalidity and infringement for integrated circuits TSMC makes and products another party (Samsung) makes, as well as issues of importation, domestic industry, public interest, damages, and remedy.

This action falls also within the exceptions to the first-to-file rule. The █████ Agreement ████████████████████████████████████████████████████████. Also, it is important that Intel, which is a signatory to all agreements central to this dispute, be a party to an action construing those agreements, and that can only happen in this action.

This Court should also not stay this action pursuant to its discretion because the relevant factors weigh against doing so. A stay would prejudice TSMC because it faces the possibility of the ITC excluding the integrated circuits TSMC makes, and delayed relief from this Court cannot repair the damage from that exclusion order to TSMC, and countless U.S. companies, universities, and consumers would suffer. Intel and TSMC ████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████ By contrast, Daedalus, who manufactures nothing, suffers no harm from this proceeding. Nor will a stay simplify the issues or promote judicial efficiency. Even if the ITC ruled on TSMC's license defense, its findings would not be binding, nor would it resolve the issue for all Transferred Patents. Allowing this case to proceed would improve, not impair, judicial efficiency, because discovery regarding the license defense has not begun in the stayed Texas

action and is only starting in the ITC Investigation. The ITC's target date for its final determination is not until April 2024, and no trial has been set in the Texas case.

Finally, this action presents a justiciable controversy. Daedalus informed TSMC about its entire portfolio of Transferred Patents, and then asserted four of them in the ITC and Texas against TSMC. TSMC needs to establish its rights to the Transferred Patents. A dispute about the terms and applicability of a contract is an actual controversy sufficient to establish declaratory judgment jurisdiction.

## III. BACKGROUND

### A. Parties

TSMC is among the world's largest semiconductor companies by market cap and is the world's most successful provider of advanced semiconductor manufacturing services. Intel designs and manufactures semiconductor chips primarily for computers and servers. Daedalus is a non-practicing entity ("NPE") and a member of a family of companies that acquires other companies' patents to enforce in patent actions.

### B. Nature of the ITC Investigation

The ITC's primary remedy is an exclusion order. *See* 19 U.S.C. § 1337(e)(1). An exclusion order can bar an entire line of products from entering the United States, which can cause a company significant revenue loss that may be impossible to recover. *See id.* (explaining that articles subject to exclusion order be excluded from entry into the United States); *see also* Matthew Norris, *Blocking Blocks at the Border: Examining Standard-Essential Patent Litigation Between Domestic Companies at the ITC*, 98 Minn. L. Rev. 713, 725 (2013) ("[T]he damage [from an exclusion order] can be significant even if an exclusion order is overturned on appeal."). Unlike a district court, which must use a four-part test to decide whether to grant injunctive relief in patent cases, *eBay, Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006), the ITC issues an exclusion order

upon finding a violation unless the public interest dictates otherwise. *See* 19 U.S.C. § 1337(e)(1) (explaining that the Commission may issue an exclusion order "unless, after considering the effect of such exclusion upon the public health and welfare, competitive conditions in the United States economy, the production of like or directly competitive articles in the United States, and United States consumers, it finds that such articles should not be excluded from entry").

Unlike a district court, the ITC has no power to enforce a subpoena for a third party to testify or produce documents and must seek the assistance of a federal district court for enforcement. *See* 19 U.S.C. § 1333(b). This procedure can delay discovery and hinder a party seeking third-party discovery to defend itself in the ITC. *See id.* (providing that district courts may enforce subpoenas); 19 C.F.R. § 210.32(g) (explaining the process of seeking authorization to seek enforcement through the district courts).

In addition, TSMC cannot add parties, such as Intel, to an ITC Investigation. *See* 19 C.F.R. § 210.14(a) (providing mechanism for complainant, but not respondents, to add parties). ITC findings also do not bind district courts. *See, e.g.*, *Zenith Elecs. LLC v. Sony Corp.*, No. C 11-02439 WHA, 2011 WL 2982377, at *3 (N.D. Cal. July 22, 2011) (noting that "any findings by the ITC are not binding here and may be given any weight, or no weight at all").

### C.  Highlights of the ███ Agreement

The salient provisions of the May 2022 ███ Agreement are straightforward. Under the ███ Agreement, ████████████████████████████████████████████████

████████████████████████████████████████████████████████████

Forty-six of the Intel patents listed in the June 2022 Assignment are "Transferred Patents" to which

TSMC holds a license by virtue of that Assignment, which transferred the patents to Daedalus. *See* Decl.,[2] ¶ 3.

The ███ Agreement specifies that ███████████████████████████████████████ ███████████████████████████████████████████████████████████████████ ██████████████████████████████████████████

### D. Intel's and Daedalus's Representations about Patent Ownership

The critical issue in this action is whether Intel owned the Transferred Patents on May 5, 2022, when it signed the ███ Agreement. Intel's actions indicate that it did. After the April 2021 Agreement and before the June 2022 Assignment, Intel repeatedly confirmed its ownership of the Transferred Patents, including the four in the ITC Investigation and the Texas litigation. *See* D.I. 2, ¶¶ 77-93. Specifically, Intel claimed to be the "assignee," "owner," and holder of "100%" interest in Transferred Patents in various USPTO filings, including:

- Thirty-seven Power of Attorney papers filed for twenty-nine of the Transferred Patents,[3] *see id.*, ¶¶ 80-81; D.I. 4, Ex. F;

- Five Application Data Sheets for Transferred Patents filed as continuation applications between April 21, 2021, and June 3, 2022, *see* D.I. 2, ¶¶ 82-84; D.I. 4, Ex. G;

- Four issue-fee transmittals; *see* D.I. 2, ¶¶ 85-86; D.I. 4, Ex. H; and

- Three terminal disclaimers; *see* D.I. 2, ¶¶ 87-88; D.I. 4, Ex. I.

Further, in the June 2022 Assignment, Intel and Daedalus acknowledged that Intel owned the Transferred Patents as of that date, telling the USPTO, "[Intel] hereby sells, conveys, transfers,

---

[2] "Decl." refers to the Declaration of Mareesa Frederick filed concurrently with this opposition.
[3] Under USPTO rules, filing a paper is a certification that the statements in it are true or believed to be true after a reasonable investigation. *See* 37 C.F.R. §§ 1.4(d)(4), 11.18(b).

assigns and delivers to [Daedalus], and [Daedalus] hereby purchases from [Intel], all of [Intel's] right, title and interest, as of [June 3, 2022], in and to the Assigned Assets."[4] D.I. 4, Ex. B at 0606.

In contrast, Intel and Daedalus filed no paper with the USPTO asserting that Daedalus owned or held any rights in any Transferred Patents before June 3, 2022. Only after that date did Daedalus sign and file with the USPTO papers identifying itself as the owner of those patents. *See, e.g.*, D.I. 2, ¶¶ 90-91. In one of those papers, Daedalus even told the USPTO that it obtained ownership by virtue of the June 2022 Assignment. *See, e.g.*, Ex. 1. And in September 2022, Daedalus told the ITC in a verified complaint that it obtained ownership of the Transferred Patents by virtue of the June 2022 Assignment. *See* D.I. 4, Ex. C, ¶¶ 9, 39, 48, 57, 65 (respectively citing ITC Exs. 5-8, each of which is the June 3 Assignment).

### E.  Differences Between the ITC Investigation, the Texas Litigation, and This Action

The ITC Investigation and the Texas litigation involve parties, patents, and issues different from those in this action. The ITC Investigation and the Texas litigation do not involve Intel, a signatory to all the contracts at the core of this litigation. *See id.*, pp. 5-11 and D.I. 4, Ex. D, pp. 6-8. Those litigations involve Samsung Electronics Co., Ltd. and Samsung Electronics America, Inc., neither of which is a party to the contracts at issue here, and neither of which is a party to this action. *Id.*

The ITC Investigation and the Texas litigation involve different patents from this action. The June 2022 Assignment lists forty-six Transferred Patents to which TSMC holds license rights, and their ownership is at issue in this action. Decl., ¶ 3. The ITC Investigation and the Texas litigation involve only four of these patents. *See generally* D.I. 4, Exs. C, D.

---

[4] The Assigned Assets include the Transferred Patents. *See* D.I. 4, Ex. B at 0606-09.

The ITC Investigation and the Texas litigation also involve different issues from this action. The ITC Investigation raises issues of infringement, invalidity, importation, domestic industry, and public interest. The Texas litigation involves issues of infringement, invalidity, equitable relief, and damages. This action, in contrast, only seeks a determination of whether TSMC has a license to the Transferred Patents, which involves (1) confirming that the Transferred Patents are licensed to TSMC under the ▇ Agreement; (2) confirming, consonant with Intel's and Daedalus's prelitigation representations, that the April 2021 Agreement did not transfer those patents to Daedalus; and (3) confirming that the June 2022 Assignment transferred ownership of the patents to Daedalus, effectuating the license granted by the ▇ Agreement.

## F. Importance of Intel's Participation in This Action

Intel is the nexus of the salient facts in this action. Intel signed the ▇ Agreement a month before it signed the June 2022 Assignment to Daedalus. *See* ▇▇▇ D.I. 4, Ex. B at 0606-09. Intel repeatedly confirmed its ownership of the Transferred Patents between April 21, 2021, and June 3, 2022. *See supra* Section III.D. The June 2022 Assignment identifies Intel as a party to the April 2021 Agreement, which it characterizes as an agreement to assign. *Id*. Despite the foregoing, Intel has not produced any documents relevant to these contracts in the ITC Investigation, and as noted above, the ITC has limited ability to compel discovery from it. *See* Decl., ¶ 8; *see also supra* Section III.B.

## IV. LEGAL STANDARD

### A. First-to-File Rule

"Under the first-to-file rule, a district court may choose to stay, transfer, or dismiss a duplicative later-filed action, although there are exceptions and the rule is not rigidly or mechanically applied—'an ample degree of discretion, appropriate for disciplined and experienced judges, must be left to the lower courts.'" *Merial Ltd. v. Cipla Ltd.*, 681 F.3d 1283, 1299 (Fed. Cir.

2012) (quoting *Kerotest Mfg. Co. v. C-O-Two Fire Equip. Co.*, 342 U.S. 180, 183-84 (1952)).[5]

The mere presence of overlapping issues does not mandate application of the first-to-file rule. *See, e.g.*, *In re Mobile Telecomms. Techs., LLC*, 243 F. Supp. 3d 478, 485 (D. Del. 2017) ("In sum, this action and the first-filed actions in Texas involve some overlapping issues. But given the facts that ARRIS is not a party to the earlier Texas Actions and that this case has a much broader scope, the cases are sufficiently different such that the first-filed rule does not apply.").

Exceptions to the "first-to-file" rule are not rare. *See Commc'ns Test Design, Inc. v. Contec, LLC*, 952 F.3d 1356, 1362 (Fed. Cir. 2020). For example, a forum selection clause "may provide an exception to the first-to-file doctrine." *Gordian Med., Inc. v. Vaughn*, No. 22-319-MN-SRF, 2022 WL 16646626, at *4 (D. Del. Nov. 3, 2022), *report and recommendation adopted by* 2022 WL 17084125 (D. Del. Nov. 18, 2022); *Verint Ams. Inc. v. Fornell*, No. 1:21-cv-00674-SB-SRF, 2022 WL 4079180, at *3 (D. Del. Sept. 6, 2022) (maintaining second action because of forum selection clause). Sometimes, the forum selection clause is determinative. *See Chemetall US Inc. v. Laflamme*, No. 16-780 (JLL), 2016 WL 1162751, at *3 (D.N.J. Mar. 24, 2016) ("[T]he presence of a single forum selection clause will almost always render the first-to-file rule inapplicable." (quoting *Samuels v. Medytox Sols., Inc.*, No. 13-7212 (SDW), 2014 WL 4441943, at *10 (D.N.J. Sept. 8, 2014))); *DePuy Synthes Sales, Inc. v. Edwards*, 23 F. Supp. 3d 472, 477-78 (E.D. Pa. 2014) (ruling that a proposed first-to-file rule transfer "is improper in light of the 2009 agreement's forum selection clause. . . . '[E]nforcement of valid forum selection clauses, bargained for by the parties, protects their legitimate expectations and furthers vital interests of the justice system.'" (quoting *Atl. Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Tex.*, 571 U.S. 49, 63 (2013))).

---

[5] Federal Circuit law governs application of the first-to-file rule in patent cases. *See Elecs. for Imaging, Inc. v. Coyle*, 394 F.3d 1341, 1346-47 (Fed. Cir. 2005).

ME1 44371036v.1

## B.    Discretionary Stay

Daedalus bears the burden of showing that a stay is warranted. *See, e.g.*, *Landis v. N. Am. Co.*, 299 U.S. 248, 255 (1936) ("[T]he suppliant for a stay must make out a clear case of hardship or inequity in being required to go forward, if there is even a fair possibility that the stay for which he prays will work damage to some one [sic] else."). In determining the propriety of such a stay, courts must consider the following factors: "(1) whether a stay would unduly prejudice or present a clear tactical disadvantage to the non-moving party; (2) whether a stay will simplify the issues in question and trial of the case; and (3) whether discovery is complete and whether a trial date has been set." *Alloc, Inc. v. Unilin Decor N.V.*, No. 03-253-GMS, 2003 WL 21640372, at *2 (D. Del. July 11, 2003) (quoting *Xerox Corp. v. 3Com Corp.*, 69 F. Supp. 2d 404, 406 (W.D.N.Y. 1999)). Courts may also consider whether the moving party would suffer any hardship absent a stay. *See, e.g.*, *Cooper Notification, Inc. v. Twitter, Inc.*, No. 09-865-LPS, 2010 WL 5149351, at *2 (D. Del. Dec. 13, 2010) (explaining that failure to "articulate a clear hardship or inequity they would suffer in the absence of a stay" "weigh[s] against" stay).

## C.    Case and Controversy

The Declaratory Judgment Act provides, "In a case of actual controversy within its jurisdiction, . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). Declaratory judgment jurisdiction requires a justiciable case or controversy under Article III. *See MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 126-27 (2007) (explaining that "the phrase 'case of actual controversy' in the [Declaratory Judgment] Act refers to the type of 'Cases' and 'Controversies' that are justiciable under Article III"). Article III permits federal courts to hear disputes that are "definite and concrete, touching the legal relations of parties having adverse legal interests," and that are amenable to "specific relief through a decree of

conclusive character." *Id.* at 127 (quoting *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 240-41 (1937)).

Declaratory judgment jurisdiction requires an "adverse legal interest," which means a "dispute as to a legal right—for example, an underlying legal cause of action that the declaratory defendant could have brought or threatened to bring." *Arris Grp., Inc. v. Brit. Telecomms. PLC*, 639 F.3d 1368, 1374 (Fed. Cir. 2011). This often arises in contractual disputes. In *MedImmune*, the Supreme Court explained that a dispute about the parties' rights and obligations under a contract sufficed to confer jurisdiction. 549 U.S. at 135, 137. In *Aetna*, the Supreme Court considered a dispute related to an insurance contract. The insurer and the insured had "taken adverse positions with respect to their existing obligations," with the insured insisting he "was entitled to the stipulated disability benefits and the continuance of the policies in force" and the insurer making "an equally definite claim that the alleged basic fact did not exist." 300 U.S. at 242. The Court ruled that, although the insured had made no demand for payment of his benefits, the parties had made competing claims regarding "a present, specific right" under the contracts, and declaratory judgment jurisdiction was proper. *Id.*

"[A] District Court cannot decline to entertain such an action as a matter of whim or personal disinclination." *Pub. Affairs Assocs., Inc. v. Rickover*, 369 U.S. 111, 112 (1962). Instead, a court must decide "whether hearing the case would 'serve the objectives for which the Declaratory Judgment Act was created.'" *Capo, Inc. v. Dioptics Med. Prods., Inc.*, 387 F.3d 1352, 1355 (Fed. Cir. 2004) (quoting *EMC Corp. v. Norand Corp.*, 89 F.3d 807, 814 (Fed. Cir. 1996)). "[T]he policy of the Act is to enable resolution of active disputes." *Id.* at 1357. When this policy is served, "dismissal is rarely proper, as illustrated in those circumstances in which dismissal was sustained." *Id.* at 1355, 1357-58.

## V.    ARGUMENT

### A.    The Court Should Not Dismiss or Stay This Action Because the First-to-File Rule Does Not Apply

#### 1)    The first-to-file rule does not apply because this action is not identical or nearly identical to Daedalus's cases.

The first-to-file rule only applies if the current and earlier actions are identical or nearly identical. *Merial*, 681 F.3d at 1299; *see also In re Telebrands Corp.*, 773 F. App'x 600, 603 (Fed. Cir. 2016) (affirming decision to not apply the first-to-file rule "because the two actions were not identical or nearly identical"); *APV N. Am., Inc. v. Sig Simonazzi N. Am., Inc.*, 295 F. Supp. 2d 393, 396 (D. Del. 2002) (noting that the first-to-file rule demands "the same parties and the same issues" as earlier controversy). Even the cases Daedalus cites are in accord. *See Merial*, 681 F.3d at 1299 (emphasizing the identity of issues and parties in the two actions); *Elpida Memory, Inc. v. Intell. Ventures I LLC*, No. 11-623-SLR, 2012 WL 3728607, at *2 (D. Del. Aug. 28, 2012) ("the first-to-file rule was clearly meant to address only mirror-image litigation"); *CRU Acquisition Grp., LLC v. Mykey Tech. Inc.*, No. 3:11-CV-05743-RBL, 2012 WL 441293, at *1 (W.D. Wash. Feb. 10, 2012) (applying rule where second action involved the same parties and raised noninfringement and invalidity of the same patents asserted in the first action). The present action is significantly different from Daedalus's lawsuits against TSMC.

##### a)    This case involves different parties.

This action involves different parties from the ITC Investigation and the Texas action. Intel is not a party to the ITC Investigation or the Texas action, and Intel is a key party to this action because it is a signatory to all the relevant contracts and it repeatedly represented to the USPTO that it owned the Transferred Patents until June 2022, a month after it executed the ▮▮ Agreement—a critical fact in determining whether TSMC holds a license to the Transferred Patents. *See supra* Section III.F.

ME1 44371036v.1

Courts must consider the difference in parties between different cases to assess the applicability of the first-to-file rule. *See In re Mobile Telecomms.*, 243 F. Supp. 3d at 484-85 ("[T]he absence of an identity of parties is a factor to be considered in deciding whether to allow concurrent litigation to proceed." (citation omitted)). The absence from Daedalus's suits of a key party, like Intel, provides a compelling reason not to apply the first-to-file rule. In *Merial*, for example, the Federal Circuit affirmed the non-application of the first-to-file rule, noting that "even if the Delaware action could be considered the first suit filed, the district court was well within its considerable discretion in concluding that principles of comity would not support a stay because the precise issues at stake differed between the proceedings, and a key party (Cipla) was absent from the Delaware action." 681 F.3d at 1299; *see also Nexon Am. Inc. v. Uniloc 2017 LLC*, No. 19-1096-CFC, 2020 WL 3035647, at *4 (D. Del. June 5, 2020) ("[This court] will not apply the first-filed rule here because the Eastern District does not have venue over Nexon America and Nexon America is a desirable, if not necessary, party to that case and will not consent to venue in the Eastern District.").

Daedalus asks the Court to discount this factor, suggesting that TSMC's presentation of a license defense at the ITC meant that including Intel was not necessary for TSMC's license defense. *See* D.I. 20 ("Br.") 11. The issue of Intel's necessity is a red herring because, as explained above, *see supra* Section III.E, TSMC could not add Intel to the ITC Investigation. *See* 19 C.F.R. § 210.14(a); *see also supra* Section III.B. TSMC's inability to do so does not alter Intel's critical roles in the contracts at issue in this case. That criticality and Intel's failure to provide relevant discovery on the license issue at the ITC counsel in favor of continuing this case.

In addition, TSMC did not waive its rights █████████████████████████████

███████████████████████████████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

████

Daedalus cites no authority for ignoring Intel's presence as a party as it decides the first-to-file issues. Intel is key to the dispute in this action: It is the only party to all the contracts, and its behavior is evidence of its ownership of the Transferred Patents before June 3, 2022. *See supra* Section III.F. The absence of a key party in the later action, such as here, weighs against application of the first-to-file rule. *See, e.g.*, *Merial*, 681 F.3d at 1299 (refusing to apply rule in absence of key party); *In re Mobile Telecomms.*, 243 F. Supp. 3d at 484-85 (same).

### b) The cases involve different issues.

This action involves different issues from Daedalus's ITC investigation and Texas action, which also counsels against the first-to-file rule. *See, e.g.*, *APV*, 295 F. Supp. 2d at 396-98 (ruling that first-to-file rule was inapplicable to cases implicating different patents and different technologies, and thus different facts); *see also Elpida*, 2012 WL 3728607, at *2 ("the first-to-file rule was clearly meant to address only mirror-image litigation"). The ITC Investigation and Texas litigation only involve four Transferred Patents, but this action will address TSMC's license rights to all Transferred Patents.

Moreover, the ITC Investigation and the Texas action involve technical issues of patent invalidity and infringement of several integrated circuits, including those made by Samsung. The ITC Investigation also involves highly factual issues of importation, domestic industry, and the public interest, and the Texas litigation implicates damages and equitable relief. In contrast, this

action only involves TSMC's license rights in light of other agreements Intel signed. Even

Daedalus recognizes the difference. It opposed TSMC's request for expedited resolution in the

ITC of the license issue by citing other issues that would remain in the ITC Investigation even

after the ITC decided the license defense. *See* Ex. 2 at 3. The ITC agreed with Daedalus. *See* D.I.

21, Ex. 5 at 2 ("The licensing issue raised by TSMC is not investigation dispositive because it is

relevant to only a subset of the proposed respondents.").

> **2)** **This action should proceed irrespective of the first-to-file rule
> because the ███ Agreement ████████
> ████████ because permitting this
> action to continue would improve, not impair, judicial
> efficiency.**

Daedalus ignores the ███ Agreement's provision ████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
██████████████████████████████

Courts in this circuit refuse to apply the first-to-file rule ████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████

14

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

████████████████████████████████████

Departure from the first-to-file rule here is especially warranted because TSMC cannot join Intel in the ITC Investigation. *See* 19 C.F.R. § 210.14(a). It is also questionable whether TSMC could join Intel in the Texas action ████████████████████████████████████. *See* ████████████; *see also Elecs. for Imaging*, 394 F.3d at 1347-48 (noting exceptions to the first-to-file rule where all relevant parties cannot be joined in the first action).

The Court should also decline to apply the first-to-file rule because permitting this action to proceed would serve the objectives of the rule. *See, e.g.*, *Elecs. for Imaging*, 394 F.3d at 1347 (noting exceptions to the first-to-file rule are warranted when "sound reason [exists] that would make it unjust or inefficient to continue the first-filed action" (quoting *Genentech, Inc. v. Eli Lilly & Co.*, 998 F.2d 931, 937-38 (Fed. Cir. 1993)). The first-to-file rule seeks to "avoid conflicting decisions and promote judicial efficiency." *Merial*, 681 F.3d at 1299. Staying or dismissing this action would not achieve that goal. This Court would ultimately need to address the license issue because the ITC's decision is not binding on the district courts. *See, e.g.*, *Tex. Instruments Inc. v. Cypress Semiconductor Corp.*, 90 F.3d 1558, 1569 (Fed. Cir. 1996) ("The district court can attribute whatever persuasive value to the prior ITC decision that it considers justified."); *In re Spansion Inc.*, Nos. 10-252 (RBK), 10-554(RBK), 2011 WL 3268084, at *9 n.5 (D. Del. July 28, 2011) (ruling ITC decision had no preclusive effect on a licensing issue), *aff'd*, 507 F. App'x 125 (3d Cir. 2012). The ITC decision will also not address all "Transferred Patents."

Even if the Texas court was presented with TSMC's license defense after the statutorily mandated stay was lifted, it should transfer that issue to Delaware under the ███ Agreement.

██████████████████ Granting Daedalus's motion would increase inefficiency because

Delaware ████████████████████████████████████████.

**B.     The Court Should Not Exercise Its Discretion to Stay Because Doing So Would Prejudice TSMC, Declining to Stay Would Not Prejudice Daedalus, and a Stay Will Not Simplify the Issues**

A discretionary stay would prejudice TSMC for several reasons. First, a stay would mean that TSMC might face an exclusion order from the ITC with possibly devastating consequences for itself and its customers, and U.S. consumers. *See supra* Section III.B; *see also* Ex. 3. A later favorable decision from this Court would not ameliorate those consequences.

Second, TSMC ████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████████████████████████

Although Daedalus asserts, without explanation, that maintaining this action would be "unfair," Br. 14, it has articulated no prejudice to its business from allowing this case to proceed. *See Cooper*, 2010 WL 5149351, at *2 (explaining that moving parties' failure to "articulate a clear hardship or inequity they would suffer in the absence of a stay" "weigh[s] against granting

16

Defendants the relief they seek"). As an NPE, Daedalus's only interest is in licensing patents, and a decisive resolution of the license issue should help Daedalus, not hinder it.

Finally, Daedalus, which chose not to bring the April 2021 Agreement[6] to the Court's attention, cites no provisions in that Agreement that would be offended by maintaining this action. A quick and conclusive resolution of TSMC's rights would benefit all parties and the judicial system by resolving whether the Transferred Patents are licensed and either ending Daedalus's actions against TSMC or removing one of TSMC's defenses.

For the reasons outlined above in Section V.A.1.b, a stay will not simplify the issues. Even if the ITC ruled on the license issue, the parties would have to litigate it again in this Court, both because the ITC decision is not binding and because this action addresses more than the four patents asserted by Daedalus in its lawsuits. *See, e.g.*, *Zenith*, 2011 WL 2982377, at *3 (noting that "any findings by the ITC are not binding here and may be given any weight, or no weight at all").

The stages of the ITC and Texas cases also do not support a stay. Discovery regarding the license defense has not begun in the stayed Texas action and remains incipient in the ITC Investigation. Intel has provided no documents related to the license issue, and the parties have taken no depositions. Decl., ¶¶ 7-8. Daedalus has produced only a handful of documents and given limited and evasive, discovery responses. *Id.*, ¶ 9.[7] Timing is not an issue. Although a hearing in the ITC is set for September 2023, the target date for the ITC's decision is not until April 2024, and the Texas action has no trial date. D.I. 21, Ex. 7.

---

[6] Because the April 2021 Agreement contains Daedalus's confidential business information, TSMC cannot cite any of its provisions in this brief. Decl., ¶ 6.
[7] Although Daedalus claims it could not provide copies of these discovery responses to this Court because they are confidential, D.I. 21, ¶ 12, Daedalus omits that these responses contain only *its* confidential information, which it is free to share. Decl., ¶ 10.

ME1 44371036v.1

Daedalus suggests that TSMC is creating duplicative proceedings, *see* Br. at 13, but TSMC has repeatedly sought to litigate the license issue first to enhance judicial efficiency. At the ITC, TSMC asked for expedited review of that issue, but Daedalus opposed. *See* Ex. 2. TSMC likewise asked Daedalus to agree to prioritize this action, which presents a single issue, over the more complex ITC Investigation, but Daedalus refused. *See* D.I. 21, Ex. 10. Daedalus now argues that TSMC could have "opposed the stay in the EDTX action and moved for summary judgment there prior to the entry of the stay," Br. 13, but Daedalus well knows that the Texas action was subject to a mandatory stay at Samsung's request, *see* 28 U.S.C. § 1659. Contrary to Daedalus's suggestion, it is unlikely the Texas court would try only the issues relating to TSMC, but not the overlapping patent infringement and invalidity issues relating to Samsung. Moreover, ███████ ███████████████████████████████████████████████████████████ it is unlikely that that court would not have addressed TSMC's license rights for all the Transferred Patents even if Intel were added to the Texas action.

    **C.**    **This Action Presents a Justiciable Controversy about the ████ Agreement, Because Daedalus and Intel Have Argued It Does Not Cover the Transferred Patents**

This action presents a justiciable controversy: did TSMC's license to the Transferred Patents under the ████ Agreement ██████████████████████████████████████████ ██████████████████████████ Intel and Daedalus assert that TSMC lacks a license to any of the Transferred Patents, now arguing that Intel's transfer of those patents to Daedalus occurred in April 2021, before Intel signed the ████ Agreement. *See* Ex. 4. But Intel's and Daedalus's current position is contrary to the June 2022 Assignment, contrary to over fifty papers Intel filed in the USPTO before June 3, 2022, and contrary to Daedalus's statements in its ITC complaint and to the USPTO.

This dispute affects TSMC's rights as to an entire portfolio of Transferred Patents formerly owned by Intel and now owned by Daedalus. Daedalus has implicitly threatened TSMC with that portfolio. In a September 9, 2022, letter Daedalus sent to TSMC just before it filed suit, Daedalus wrote "in relation to Daedalus's intellectual property" and claimed that TSMC infringed "*at least* the inventions claimed*" in the four patents asserted in the ITC. *See* Ex. 5 at 1 (emphasis added).

TSMC invests billions in research and development each year (e.g., $4.46 billion in 2021). *See* Ex. 6 at 6. Its efforts have allowed it to provide its customers access to the most advanced semiconductor process technologies. *See id.*[8] Resolution of the licensing issue in this action is important to removing the uncertainty surrounding TSMC's rights to the Transferred Patents that limits exploration of new advances for the U.S. market by TSMC and its customers, including U.S. universities and U.S. technology companies.

A dispute regarding the terms and applicability of a contract is an actual controversy sufficient for declaratory judgment jurisdiction. *See, e.g.*, *MedImmune*, 549 U.S. at 128, 137 (ruling that declaratory judgment on invalidity filed by licensee presented actionable case and controversy even though licensee had continued making payments under license agreement); *Aetna*, 300 U.S. at 242 (ruling case and controversy existed where "the parties had taken adverse positions with respect to their existing [contractual] obligations"); *Powertech Tech. Inc. v. Tessera, Inc.*, 660 F.3d 1301, 1309-10 (Fed. Cir. 2011) (noting that "the issue of contract interpretation is a merits issue," and that the dispute "as to whether the license agreement requires royalty payments to be tied to valid patent coverage—is sufficient to support declaratory judgment jurisdiction"); *SanDisk Corp. v. STMicroelecs., Inc.*, 480 F.3d 1372, 1382-83 (Fed. Cir. 2007) (finding active

---

[8] As one example of these efforts, TSMC won the 2021 IEEE Corporate Innovation Award for its work developing 7 nm technology, which "marked the first time the world's most advanced logic technology was . . . available to the entire semiconductor industry as an open platform." Ex. 7.

controversy even where patentee had informed declaratory judgment plaintiff that it did not intend to sue for infringement, because parties took competing positions as to their rights under certain patents); *Amgen Inc. v. Amneal Pharms. LLC*, No. 16-853-MSG, 2019 WL 4538135, at *4 (D. Del. Sept. 19, 2019) ("[T]he case or controversy requirement may be satisfied if the patentee affirmatively puts the other party in the position where the party must 'either pursu[e] arguably illegal behavior or abandon that which he claims a right to do.'" (second alteration in original) (quoting *Tabletop Media, LLC v. AMI Ent. Network, LLC*, No. 16-1121-RGA-MPT, 2017 WL 4511351, at *3 (D. Del. Oct. 10, 2017))), *report and recommendation adopted by* 2017 WL 4897526 (D. Del. Oct. 30, 2017)).

Daedalus cites no case law supporting its implicit assertion that TSMC must wait to be accused of infringement for an actionable controversy. *See* Br. 14-15 (citing no case law). Its arguments appear directed to lawsuits in which a party seeks a declaration of noninfringement and invalidity of a patent it has not been accused of infringing. *Id.* That is not the situation here. Both Intel and Daedalus have challenged TSMC's license rights to an entire portfolio of Transferred Patents. And Daedalus is keeping open the threat of additional suits. TSMC has a license to the Transferred Patents, but both Intel and Daedalus disagree. The parties have "taken adverse positions with respect to their existing obligations," *see Aetna*, 300 U.S. at 242, and this case seeks resolution of that dispute.

## VI.  CONCLUSION

For the foregoing reasons, TSMC respectfully requests the Court deny Daedalus's motion.

ME1 44371036v.1

Dated: March 10, 2023

OF COUNSEL:

Mareesa Frederick
E. Robert Yoches
Cara E. Regan
Gary C. Ma
FINNEGAN, HENDERSON, FARABOW,
 GARRETT & DUNNER LLP
901 New York Avenue, NW
Washington, DC 20001
Telephone: 202.408.4000
mareesa.frederick@finnegan.com
bob.yoches@finnegan.com
cara.regan@finnegan.com
gary.ma@finnegan.com

Clement J. Naples
LATHAM & WATKINS LLP
1271 Avenue of the Americas
New York, NY 10020
clement.naples@lw.com

Bert C. Reiser
Susan Y. Tull
LATHAM & WATKINS LLP
555 Eleventh Street, NW Suite 1000
Washington, DC 20004
bert.reiser@lw.com
susan.tull@lw.com

Dale Chang
LATHAM & WATKINS LLP
330 North Wabash Avenue, Suite 2800
Chicago, IL 60611
dale.chang@lw.com

Thomas W. Yeh
LATHAM & WATKINS LLP
355 South Grand Avenue, Suite 100
Los Angeles, CA 90071-1560
thomas.yeh@lw.com

McCARTER & ENGLISH, LLP

*/s/ Daniel M. Silver*
Daniel M. Silver (#4758)
Alexandra M. Joyce (#6423)
Renaissance Centre
405 N. King Street, 8th Floor
Wilmington, Delaware 19801
(302) 984-6300
dsilver@mccarter.com
ajoyce@mccarter.com

*Counsel for Plaintiff*