# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| TAIWAN SEMICONDUCTOR MANUFACTURING COMPANY LIMITED, | ) ) ) ) | **REDACTED PUBLIC VERSION FILED APRIL 3, 2023** |
| Plaintiff, | ) ) | |
| v. | ) ) | C.A. No. 22-cv-1647-MN-JLH |
| DAEDALUS PRIME LLC AND INTEL CORP., | ) ) ) | ██████████████████ |
| Defendants. | ) ) ) | |

## PLAINTIFF TAIWAN SEMICONDUCTOR MANUFACTURING COMPANY LIMITED'S OPPOSITION TO DEFENDANT INTEL CORPORATION'S MOTION TO DISMISS

**TABLE OF CONTENTS**

I.      INTRODUCTION ................................................................................................. 1

II.     SUMMARY OF ARGUMENT .......................................................................... 2

III.    BACKGROUND ................................................................................................. 3

        A.      Parties ...................................................................................................... 3

        B.      Intel's LOT Agreement with TSMC .................................................... 3

        C.      Intel's Transfer of the Patents to Daedalus ........................................ 4

        D.      Intel's Response to Daedalus's Suits .................................................... 5

        E.      Daedalus's Response to TSMC's DJ Action ....................................... 5

IV.     LEGAL STANDARDS ...................................................................................... 6

        A.      Case or Controversy ............................................................................... 6

        B.      Discretionary Exercise of Declaratory-Judgment Jurisdiction ........ 6

V.      ARGUMENT ...................................................................................................... 7

        A.      This Action Presents a Justiciable Controversy to Which Intel Is a
                Necessary Party ...................................................................................... 7

                1)      Intel and TSMC have an active dispute regarding the terms and
                        application of the LOT Agreement .............................................. 7

                2)      Intel must be party to this action because it will examine contracts
                        Intel signed and determine Intel's rights and obligations under
                        them .................................................................................................. 8

                3)      Intel's arguments against jurisdiction misstate the law and the facts ....... 10

                        a)      Intel cannot escape this controversy just because it cannot
                                sue TSMC for infringement. ............................................. 10

                        b)      Intel cannot escape this controversy just because it has no
                                claim against TSMC. .......................................................... 11

                        c)      Intel cannot escape this controversy just because TSMC has
                                not sued it for breach. ......................................................... 11

                        d)      Intel cannot escape this controversy by mischaracterizing
                                TSMC's claim as seeking a declaration of no infringement. ........ 12

        B.      The Court Should Exercise Declaratory-Judgment Jurisdiction over this
                Case ......................................................................................................... 15

VI.     CONCLUSION ................................................................................................. 17

# **TABLE OF AUTHORITIES**

**Cases**

*Aetna Life Insurance Co. v. Haworth*,
  300 U.S. 227 (1937) ................................................................................. 6, 8, 15

*Amgen Inc. v. Amneal Pharmaceuticals LLC*,
  No. CV 16-853-MSG, 2019 WL 4538135 (D. Del. Sept. 19, 2019) ....................................... 11

*Arris Group, Inc. v. British Telecommunications PLC*,
  639 F.3d 1368 (Fed. Cir. 2011) ................................................................................. 6, 11

*Bell Atlantic Corp. v. MFS Communications Co.*,
  901 F. Supp. 835 (D. Del. 1995) ................................................................................. 14

*Benitec Australia, Ltd. v. Nucleonics, Inc.*,
  495 F.3d 1340 (Fed. Cir. 2007) ................................................................................. 12

*Bennett v. CIT Bank*, *N.A.*,
  482 F. Supp. 3d 1204 (N.D. Ala. 2020),
  *order corrected on denial of reconsideration*, 544 F. Supp. 3d 1225 (N.D. Ala. 2021) .......... 15

*BNSF Railway Co. v. San Joaquin Valley Railroad Co.*,
  No. CV F 08-1086 AWI SMS, 2012 WL 1355662 (E.D. Cal. Apr. 18, 2012).................... 8, 14

*Boehringer Ingelheim Vetmedica, Inc. v. Merial, Ltd.*,
  No. CIV. 3:09CV212 (AWT), 2010 WL 174078 (D. Conn. Jan. 14, 2010) ........................... 14

*Butcher & Singer, Inc. v. Kellam*,
  623 F. Supp. 418 (D. Del. 1985) ................................................................................. 10

*Capo, Inc. v. Dioptics Medical Products*, *Inc.*,
  387 F.3d 1352 (Fed. Cir. 2004) ................................................................................. 7, 16

*Caraco Pharmaceutical Laboratories, Ltd. v. Forest Laboratories, Inc.*,
  527 F.3d 1278 (Fed. Cir. 2008) ................................................................................. 6

*Coffman v. Breeze Corp.*,
  323 U.S. 316 (1945) ................................................................................. 14

*Constitution Party of Pennsylvania v. Aichele*,
  757 F.3d 347 (3d Cir. 2014) ................................................................................. 13

*CryoLife, Inc. v. C.R. Bard, Inc.*,
  No. CV 14-559-SLR, 2015 WL 1069397 (D. Del. Mar. 10, 2015) ........................................... 13

*EMC Corp. v. Norand Corp.*,
   89 F.3d 807 (Fed. Cir. 1996)........................................................................... 7

*Fuel Automation Station, LLC v. Frac Shack Inc.*,
   No. 20-CV-01492-STV, 2021 WL 6118655 (D. Colo. Apr. 2, 2021)..................................... 11

*General Electric Co. v. NeuroGrafix*,
   No. 2:12-CV-04586-MRP, 2012 WL 12888331 (C.D. Cal. Sept. 28, 2012) ......................... 11

*Grace Holdings, L.P. v. Sunshine Mineral & Refining Co.*,
   901 F. Supp. 853 (D. Del. 1995)...................................................................... 14

*In re Schering Plough Corp. Intron/Temodar Consumer Class Action*,
   678 F.3d 235 (3d Cir. 2012)............................................................................ 14

*Johnson & Johnson v. Coopervision, Inc.*,
   720 F. Supp. 1116 (D. Del. 1989)...................................................................... 8

*King Pharmaceuticals, Inc. v. Eon Labs, Inc.*,
   616 F.3d 1267 (Fed. Cir. 2010)........................................................................ 12

*Lans v. Digital Equipment Corp.*,
   252 F.3d 1320 (Fed. Cir. 2001)........................................................................ 12

*MedImmune, Inc. v. Genentech, Inc.*,
   549 U.S. 118 (2007)............................................................................. 6, 10, 12

*MedImmune, Inc. v. Genentech, Inc.*,
   No. CV 03-2567 MRP (CTX), 2004 WL 3770589 (C.D. Cal. Apr. 26, 2004) ...................... 12

*Microchip Technology Inc. v. Chamberlain Group, Inc.*,
   441 F.3d 936 (Fed. Cir. 2006)........................................................................ 6, 10

*Nike, Inc. v. Already, LLC*,
   663 F.3d 89 (2d Cir. 2011), *aff'd*, 568 U.S. 85 (2013) .......................................... 13

*Niles-Bement-Pond Co. v. Iron Moulders' Union, Local No. 68*,
   254 U.S. 77 (1920)....................................................................................... 9

*Prasco, LLC v. Medicis Pharmaceutical Corp.*,
   537 F.3d 1329 (Fed. Cir. 2008)........................................................................ 12

*Provident Tradesmens Bank & Trust Co. v. Patterson*,
   390 U.S. 102 (1968)...................................................................................... 9

*Public Affairs Associates, Inc. v. Rickover*,
369 U.S. 111 (1962) ................................................................................ 7

*Ragan Henry Broad. Group, Inc. v. Hughes*,
No. CIV. A. 91-CV—6157, 1992 WL 151308 (E.D. Pa. June 19, 1992) ................................. 8

*S3 Graphics Co. v. ATI Technologies. ULC*,
No. 11-1298-LPS, 2015 WL 8999513 (D. Del. Dec. 11, 2015) ................................. 13

*SanDisk Corp. v. STMicroelectronics, Inc.*,
480 F.3d 1372 (Fed. Cir. 2007) ................................................................ 10

*Sanyo Electric Co., Ltd v. Intel Corp.*,
No. CV 18-1709-RGA, 2019 WL 1650067 (D. Del. Apr. 17, 2019) ................................. 13

*U.S. Department of Treasury v. Official Committee of Unsecured Creditors of Motors
Liquidation Co.*,
475 B.R. 347 (S.D.N.Y. 2012) ................................................................ 14

**Statutes**

28 U.S.C. § 2201(a) ................................................................ 6, 7

**Constitutional Provisions**

U.S. Const. art III ................................................................ 6

**TABLE OF EXHIBITS**

| Exhibit Number | Description |
|---|---|
| 1 | Patent Assignment Agreement between Intel Corporation and Daedalus Prime LLC recorded February 13, 2023 |
| 2 | Time, *Inside the Taiwan Firm that Makes the World's Tech Run* (Oct. 1, 2021), https://time.com/6102879/semiconductor-chip-shortage-tsmc/ |
| 3 | Financial Times, *TSMC: How a Taiwanese Chipmaker Became a Linchpin of the Global Economy* (Mar. 24, 2021), https://www.ft.com/content/05206915-fd73-4a3a-92a5-6760ce965bd9 |
| 4 | Fortune, *Intel* (Aug. 3, 2022), https://fortune.com/company/intel/ |
| 5 | RPX, *Q4 in Review* (Jan. 2023), *available at* https://www.rpxcorp.com/wp-content/uploads/sites/6/2023/01/RPX-Q4-in-Review-January-2023.pdf |

## I.      INTRODUCTION

Contrary to the theme of Intel Corporation's Motion to Dismiss, Taiwan Semiconductor Manufacturing Company Limited ("TSMC") is not asking this Court for a declaration of noninfringement. Intel's Motion mischaracterizes TSMC's Complaint to argue it does not belong in this action because it no longer owns certain patents ("Transferred Patents"). That argument muddles the gravamen of the complaint in this case to hide Intel's pivotal role in the dispute TSMC brings to this Court. *See, e.g.*, D.I. 29 ("Br.") at 3-4, 6-13. Intel signed three contracts, and possibly a fourth, that underlie that dispute, and it filed numerous documents in the United States Patent and Trademark Office ("USPTO") that affect the dispute. It is a requisite party to this case.

TSMC's Complaint asks the Court to declare Intel granted TSMC a license to the Transferred Patents via a ████████████████████████████████ Agreement ("LOT Agreement") ██████████████ Intel transferred those patents to Daedalus Prime LLC in an Assignment effective June 3, 2022. Intel denies it granted or made effective that license, but that position conflicts with the language of the June 2022 Assignment and more than fifty certified filings by both Intel and Daedalus in the USPTO representing that Intel owned the Transferred Patents until the June 2022 Assignment.

The case also implicates two contracts Intel signed—an April 21, 2021, Patent Agreement with Daedalus and the June 2022 Assignment Daedalus recorded with the USPTO on June 6, 2022—███████████████████████████████████████████████████ ██████████████████████████████████████████████.¹ The Court must consider

---

¹ TSMC placed the LOT Agreement, the June 3, 2022, Assignment, and the April 26, 2021, document in the record. *See* D.I. 2, Ex. A; D.I. 4, Ex. B; Ex. 1. TSMC pled that the April 21, 2021, Agreement did not assign the Transferred Patents to Daedalus, D.I. 27, ¶ 6, but TSMC cannot provide a copy of the Agreement because it contains Intel's and Daedalus's confidential information. Neither Intel nor Daedalus has provided the Court with a copy of that Agreement, even though Intel refers to in its Motion. *See* Br. 4.

these agreements to resolve the timing of Intel's ownership of the Transferred Patents and determine whether Intel granted TSMC a license to these patents under the LOT Agreement.

Intel agreed a Delaware court must decide issues involving the LOT Agreement, and TSMC respectfully asks this Court to deny Intel's Motion so it can do so.

## II.     SUMMARY OF ARGUMENT

This action presents an active case and controversy between Intel and TSMC over which the Court holds declaratory-judgment jurisdiction: whether Intel granted TSMC a license pursuant to the LOT Agreement and then ███████████████████████████████ ███████████████████████████████████. That controversy involves a dispute between Intel and TSMC as to whether the Transferred Patents are "Subject Patents" and "Specified Patents," and whether Intel's June 2022 Assignment to Daedalus was a "Transfer" under the LOT Agreement. Hence, there is legal adversity between Intel and TSMC.

Intel claims disinterest in the controversy, but its arguments against declaratory-judgment jurisdiction misstate the law and mischaracterize TSMC's Complaint. Neither Intel's inability to sue TSMC nor the absence of a breach-of-contract claim defeats jurisdiction. Although Intel attempts to recast this case as seeking a declaratory judgment of noninfringement, TSMC has pled a contract action that involves patents. TSMC does not ask this Court to consider infringement.

Intel also invites the Court to exercise its discretion to decline jurisdiction, but it provides no basis for that request. This case differs meaningfully from Daedalus's other cases against TSMC, not least because Intel is not a party to those other cases. Hearing and resolving the parties' dispute in this case would serve the purpose of the Declaratory Judgment Act by settling the conflicting interpretations of the contracts ██████████████████, so the Court should not decline to exercise its jurisdiction.

2

## III.  BACKGROUND

### A.  Parties

TSMC is one of the world's largest semiconductor companies and is the recognized leader for the most advanced semiconductor processes. *See* Ex. 2 at 3 (noting TSMC's market share); Ex. 3 at 1(describing TSMC's work with "3 nanometre chips, semiconductors expected to be up to 70 per cent [sic] faster and more power-efficient than the most advanced in production now"). TSMC uses its advanced technology to manufacture semiconductor wafers for its customers based on their circuit designs.

Intel, a TSMC customer, *see* D.I. 26, Ex. 6 at 100, designs and manufactures semiconductor chips primarily for computers and servers. *See, e.g.*, Ex. 4 at 1-2. Daedalus, an NPE, manufactures nothing, but instead acquires other companies' patents to enforce. *See, e.g.*, D.I. 4, Ex. C ¶ 108.

### B.  Intel's LOT Agreement with TSMC

Patent infringement suits between semiconductor competitors are relatively rare, but infringement suits by NPEs are increasingly common, with one author estimating that NPEs sued 2,290 defendants in 2022 alone. *See* Ex. 5 at 2. Because these entities make no products, they face no threat of infringement counterclaims, and because they have few documents and few employees, they have a small discovery burden.



To reduce the impact of NPE suits, TSMC and Intel entered the LOT Agreement ███████ ███ *See* D.I. 2, Ex. A at 1. In the agreement, ████████████████████ ████████████████████ LOT Agreement defines ████████ ████████████████ *Id.* §§ 1.26; 2.1.1(a). "Subject Patents" are ███████ ████████████████████████████ ████████████████████████████ ████████████████

The LOT Agreement declares that the license ██████████████████████

becomes effective ████████████████████████████████████

The LOT Agreement defines a "Transfer" as, ████████████████████████

██████████████████████████

In the LOT Agreement, Intel and TSMC agreed that █████████████████

██████████████████████, and they promised to ████████████████

████████████████████████████████████████████████

████████████████████████████. They also agreed that any

disputes ████████████████████████ would be ███████████████████

████████████████████████████████████████████████

### C.      Intel's Transfer of the Patents to Daedalus

The June 2022 Assignment, signed by Intel and Daedalus, recites that the assignment of

certain Intel patents was effective June 3, 2022, a month after Intel executed the LOT Agreement

with TSMC. *See* D.I. 4, Ex. B at 0606. That Assignment describes an April 2021 Patent Agreement

between Intel and Daedalus as one "pursuant to which, among other things, [Intel] has agreed to

transfer to [Daedalus]" listed patents. *Id.*

Forty-six of the patents and applications in the Assignment (the Transferred Patents) have

the requisite ████████████████████████████████████ under the LOT

Agreement. *See* D.I. 2, Ex. A, §§ 1.26, 2.1.1(a); D.I. 27, ¶ 3 (identifying Transferred Patents).

Between April 2021 and June 2022, Intel continued to prosecute the Transferred Patents in the

USPTO, and in forty-nine filings with the USPTO, Intel certified to the USPTO and the public it

was the "assignee" or "the "owner" of "100%" interest in the Transferred Patents. *See* D.I. 27, ¶ 3

(identifying filings); *see also id.* ¶ 5 (identifying similar statements). Intel also told the USPTO

and the public in the June 2022 Assignment it owned the Transferred Patents as of the June 3,

2022, "Effective Date" of the Assignment, and was "transferring" them to Daedalus by that document. D.I. 4, Ex. B at 0606. Daedalus agreed with Intel, telling the USPTO in the fall of 2022 that it obtained ownership of the Transferred Patents via the June 2022 Assignment, and making the same certification in its verified International Trade Commission ("ITC") complaint dated September 12, 2022. *See, e.g.*, D.I. 4, Ex. C, ¶¶ 9, 39, 48, 57, 65 (respectively citing ITC Exhibits 5-8, each of which is the June 2022 Assignment); D.I. 26, Ex. 1 (citing recorded June 2022 Assignment to show ownership in Daedalus Oct. 2022 USPTO filing).

### D.    Intel's Response to Daedalus's Suits

Daedalus sued TSMC on September 12, 2022, alleging infringement of four Transferred Patents. *See generally* D.I. 4, Ex. D. The next day, under ████████████████████████, TSMC asked Intel to confirm that Intel assigned the patents to Daedalus ████████████████ ████████████████████████████████████████████. Intel responded, contrary to its and Daedalus's repeated certifications to the USPTO and the ITC, that it transferred the patents to Daedalus in April 2021. *Id.*; *supra* Section III.C; *see also* D.I. 29 ("Br.") at 4 (asserting transfer occurred under "the terms of th[e] April 21, 2021 Patent Agreement").

### E.    Daedalus's Response to TSMC's DJ Action

After TSMC filed this action, ██████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ██████████████████████████████ *See* Br. 3.

## IV.    LEGAL STANDARDS

### A.    Case or Controversy

Article III of the Constitution permits federal courts to hear disputes that are "definite and concrete, touching the legal relations of parties having adverse legal interests," and that are amenable to "specific relief through a decree of conclusive character." *MedImmune*, *Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007) (quoting *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 240-41 (1937)). To align with Article III of the Constitution, the Declaratory Judgment Act requires a dispute to present a "case or controversy." *Id.*; 28 U.S.C. § 2201(a).

The Federal Circuit had applied a "reasonable apprehension" test to evaluate whether a declaratory judgment action presented a sufficient case or controversy, *see, e.g.*, *Microchip Tech. Inc. v. Chamberlain Grp., Inc.*, 441 F.3d 936, 942-45 (Fed. Cir. 2006), but in 2007, the Supreme Court ruled that test was too narrow. *MedImmune*, 549 U.S. at 132 n.11, 137. "Following *MedImmune*, proving a reasonable apprehension of suit is only one of many ways a patentee can satisfy the Supreme Court's more general all-the-circumstances test to establish that an action presents a justiciable Article III controversy." *Caraco Pharm Lab'ys, Ltd. v. Forest Lab'ys, Inc.*, 527 F.3d 1278, 1291 (Fed. Cir. 2008). After *MedImmune*, the Federal Circuit has found declaratory-judgment jurisdiction even when the declaratory-judgment defendant had no cause of action against the plaintiff. *See, e.g.*, *Arris Grp., Inc. v. Brit. Telecomms. PLC*, 639 F.3d 1368, 1374 n.4 (Fed. Cir. 2011) ("A controversy as to a legal right may also arise in some cases where the declaratory defendant has no cause of action.").

### B.    Discretionary Exercise of Declaratory-Judgment Jurisdiction

The Declaratory Judgment Act provides, "In a case of actual controversy within its jurisdiction, . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."

28 U.S.C. § 2201(a). Although the Act gives a court discretion to hear a case, "a District Court cannot decline to entertain such an action as a matter of whim or personal disinclination." *Pub. Affairs Assocs., Inc. v. Rickover*, 369 U.S. 111, 112 (1962). Instead, a court must decide "whether hearing the case would 'serve the objectives for which the Declaratory Judgment Act was created.'" *Capo, Inc. v. Dioptics Med. Prods., Inc.*, 387 F.3d 1352, 1355 (Fed. Cir. 2004) (quoting *EMC Corp. v. Norand Corp.*, 89 F.3d 807, 814 (Fed. Cir. 1996)). "The policy of the Act is to enable resolution of active disputes." *Id.* at 1357. When this policy is served, dismissal is rarely proper. *Id.* at 1355, 1357-58.

## V.    ARGUMENT

### A.    This Action Presents a Justiciable Controversy to Which Intel Is a Necessary Party

#### 1)    Intel and TSMC have an active dispute regarding the terms and application of the LOT Agreement

Intel and TSMC disagree on the interpretation and application of the LOT Agreement. Although Intel claims otherwise, Br. 4, Intel and TSMC dispute "Subject Patents," "Specified Patents," and "Transfer" under the LOT Agreement. "Subject Patents" are ███████████████

███████████████████████████████████████████████

███████████████████████████ "Specified Patents" ███████████

██████████████████████████████████████████████

████████████████████████. TSMC contends, consistent with the public record,

*see supra* Section III.C, that the Transferred Patents are Subject Patents ███████████████

██████████ and they are Specified Patents █████████████████████. *See* D.I. 27,

¶ 3. As a result, under the LOT Agreement, TSMC claims licenses to those Transferred Patents

█████████████████████████████████████████████

████████. Intel disagrees, which raises a justiciable controversy.

Intel contends that it assigned the patents to Daedalus under the April 21, 2021, Patent Agreement, but Intel and Daedalus both characterized that Agreement as a mere promise to assign that the June 2022 Assignment fulfilled. *See* D.I. 4, Ex. B at 0606. *See, e.g.*, Br. 4; D.I. 26, Ex. 4. This is also an active dispute and makes this case proper for declaratory judgment. *See, e.g.*, *Aetna*, 300 U.S. at 242 (finding justiciable dispute where party made "a claim of present, specific right" and other party "made an equally definite claim that the alleged basic fact did not exist").

### 2) Intel must be party to this action because it will examine contracts Intel signed and determine Intel's rights and obligations under them

Although Intel claims disinterest in the fight over TSMC's license rights, it does not deny a justiciable controversy exists. *See generally* Br. Intel is a necessary party to that controversy for the Court to resolve the matter. To decide this case, the Court must construe Intel and TSMC's LOT Agreement, Intel and Daedalus's April 21, 2021, Patent Agreement, and Intel and Daedalus's June 2022 Assignment, ███████████████████████████████████████ ████████ *See, e.g.*, *Ragan Henry Broad. Grp., Inc. v. Hughes*, No. CIV. A. 91-CV—6157, 1992 WL 151308, at *2 (E.D. Pa. June 19, 1992) ("Generally, where rights sued upon arise from a contract, all parties thereto must be joined."); *see also Johnson & Johnson v. Coopervision, Inc.*, 720 F. Supp. 1116, 1119, 1122 (D. Del. 1989) (ruling, in action for breach of contract, that non-signatory to contract was a necessary party because of its involvement in negotiations and its status as a signatory to related contracts).[2]

---

[2] Although this case does not involve joinder, as Intel is already a party, cases evaluating when a party must be joined "provide[] necessary insight into the question of whether a party can be forced to maintain its status as a plaintiff or defendant when it seeks to be excused from the proceeding." *See BNSF Ry. Co. v. San Joaquin Valley R. Co.*, No. CV F 08-1086 AWI SMS, 2012 WL 1355662, at *3 (E.D. Cal. Apr. 18, 2012).

In *Niles-Bement-Pond Co. v. Iron Moulders' Union, Local No. 68*, the Supreme Court required the Tool Company to continue as a party because its contract with the defendants underpinned the plaintiff's claim, "and the character and construction of that contract . . . must inevitably be passed upon in any decision of the case." 254 U.S. 77, 80-81 (1920) (considering whether company in contract with employees was indispensable party to second company's action seeking to enjoin harassment by those employees).[3] Similarly here, TSMC's claim sounds in the LOT Agreement, to which Intel is party, and the Court must decide both TSMC's and Intel's rights and obligations under that Agreement, making Intel a necessary party. *See, e.g.*, D.I. 2, Ex. A,

███████████████████████████████████████████████████████████████████

███████████████████████████████████████

Intel is also necessary to this action because the Court will determine whether Intel owned the Transferred Patents on ████████████ the Effective Date of the LOT Agreement. *See* D.I. 2, Ex. A at 1. Not only do Intel and Daedalus disagree with TSMC's position that Intel owned the patents on that date, Intel and Daedalus now do not even agree when the earlier transfer took place. *See* Br. 4 (asserting transfer occurred via Patent Agreement dated April 21, 2021); Ex. 1 at 0657 (asserting transfer effective April 26, 2021). The Court's ruling will adjudicate all parties' rights in the Transferred Patents and the effect of Intel's repeated claims of ownership at the USPTO between April 2021 and June 2022. Because this case will determine what Intel's ownership rights

---

[3] Since 1920, the Federal Rules have been updated to remove references to "indispensable" parties. "The new text of the Rule was not intended as a change in principles. . . . Where the new version emphasizes the pragmatic consideration of the effects of the alternatives of proceeding or dismissing, the older version tended to emphasize classification of parties as 'necessary' or 'indispensable.' Although the two approaches should come to the same point, since the only reason for asking whether a person is 'necessary' or 'indispensable' is in order to decide whether to proceed or dismiss in his absence and since that decision must be made on the basis of practical considerations." *Provident Tradesmens Bank & Tr. Co. v. Patterson*, 390 U.S. 102, 116 n.12 (1968).

were when it made representations about those rights to the USPTO and when it signed the LOT Agreement with TSMC, Intel must be party to this case. *See, e.g.*, *Butcher & Singer, Inc. v. Kellam*, 623 F. Supp. 418, 426 (D. Del. 1985) (ruling the original owner of bonds was an indispensable party where correct ownership of bonds was a predicate to resolving breach claims between putative bond owner and his agent).

### 3) Intel's arguments against jurisdiction misstate the law and the facts

#### a) Intel cannot escape this controversy just because it cannot sue TSMC for infringement.

Although this case is about whether Intel granted TSMC a license to the Transferred Patents under the LOT Agreement, Intel denies TSMC has a justiciable controversy with it because Intel no longer owns the Transferred Patents so it can no longer sue TSMC for infringement. Br. 3, 6-13. Intel not only mischaracterizes the nature of this action, but also relies on a case, *Microchip Technology, Inc. v. Chamberlain Group, Inc.*, 441 F.3d 936 (Fed. Cir. 2006), that is no longer good law. *See* Br. 6, 9, 11. *Microchip* applied the reasonable-apprehension-of-suit test for determining declaratory-judgment jurisdiction, but the Supreme Court overturned the Federal Circuit's single-minded reliance on that test in *MedImmune*, 549 U.S. at 132 n.11, 137; *see, e.g.*, *Caraco*, 527 F.3d at 1290. The Federal Circuit has acknowledged, "The Supreme Court's opinion in *MedImmune* represents a rejection of our reasonable apprehension of suit test." *SanDisk Corp. v. STMicroelectronics, Inc.*, 480 F.3d 1372, 1380 (Fed. Cir. 2007). The patentee in *SanDisk* told the declaratory-judgment plaintiff it did not intend to sue for infringement, but the Federal Circuit still found an active controversy because the parties took competing positions about their rights in certain patents, just as in this case. *Id.* at 1377.

> **b)** **Intel cannot escape this controversy just because it has no claim against TSMC.**

Intel argues that there is no controversy because it cannot bring a claim against TSMC. *See, e.g.*, Br. 7, 11. This argument is wrong because the Federal Circuit has specifically ruled that there can be declaratory-judgment jurisdiction where the defendant has no independent cause of action against the plaintiff. "A controversy as to a legal right may also arise in some cases where the declaratory defendant has no cause of action." *Arris*, 639 F.3d at 1374 n.4; *see also Fuel Automation Station, LLC v. Frac Shack Inc.*, No. 20-CV-01492-STV, 2021 WL 6118655, at *4 (D. Colo. Apr. 2, 2021) ("The Supreme Court made clear in *MedImmune, Inc.* that the case or controversy requirement may be satisfied even where the declaratory judgment defendant does not have an underlying cause of action against the party seeking the declaratory judgment."); *Gen. Elec. Co. v. NeuroGrafix*, No. 2:12-CV-04586-MRP, 2012 WL 12888331, at *4 (C.D. Cal. Sept. 28, 2012) ("[T]he cause-of-action showing is an exemplar, i.e., just one way, to satisfy the adverse-legal-interests requirement . . . . The Supreme Court and the Federal Circuit have both previously found declaratory judgment jurisdiction in the absence of any underlying cause of action that the declaratory judgment defendant could have brought against the plaintiff at the time of the jurisdictional finding.").

> **c)** **Intel cannot escape this controversy just because TSMC has not sued it for breach.**

Intel also denies there can be a case or controversy because TSMC has not alleged breach of the LOT Agreement, Br. 1, 4, 11, but Intel fails to support that argument by case law or logic. Indeed, contrary to Intel's argument, in *Amgen Inc. v. Amneal Pharmaceuticals LLC*, this Court considered and rejected the proposition that one party had to assert a breach of contract for declaratory-judgment jurisdiction to lie, finding the parties had an actionable dispute over the meaning of a contract. No. CV 16-853-MSG, 2019 WL 4538135, at *4 (D. Del. Sept. 19, 2019)

(ruling against party that argued motion to enforce agreement "does not create jurisdiction, unless there has been a breach of contract allegation, and because no such allegation has been raised, there is no jurisdiction"). In *MedImmune*, the Supreme Court ruled the plaintiff presented a justiciable controversy by seeking a declaration of its contract obligations even though neither party alleged a breach. 549 U.S. at 128, 137; *MedImmune, Inc. v. Genentech, Inc.*, No. CV 03-2567 MRP (CTX), 2004 WL 3770589, at *1 (C.D. Cal. Apr. 26, 2004) (noting, in underlying district court decision, set of claims raised by plaintiff in declaratory-judgment complaint).

> **d)     Intel cannot escape this controversy by mischaracterizing TSMC's claim as seeking a declaration of no infringement.**

Intel follows its misstatements of the law with mischaracterizations of TSMC's claim. It asks to be excused because it currently lacks ownership of the Transferred Patents and because when the Transfer occurred "does not affect whether Intel could sue TSMC for infringement." Br. 12.[4] Repeating it cannot sue TSMC, *see, e.g.*, Br. 7, 10, Intel string-cites cases featuring claims for declaratory judgment of noninfringement or invalidity that courts dismissed due to the lack of any controversy as to infringement,[5] but Intel's argument is a red herring.

---

[4] *See also* Br. 4-5 ("Intel's belief about the assignment date is, however, immaterial . . . . Intel no longer held any ownership rights"), 13 ("[T]he injury or threat of injury to TSMC is from Daedalus' assertion of the patents against TSMC; Intel's belief as to when the patents were transferred or whether TSMC has a license is irrelevant.").

[5] *See* Br. 6-13; *King Pharms., Inc. v. Eon Labs, Inc*., 616 F.3d 1267, 1282 (Fed. Cir. 2010) (finding party could not properly raise counterclaims of invalidity or noninfringement where opposing party had issued "broad and unrestricted covenants not to sue"); *Prasco, LLC v. Medicis Pharm. Corp*., 537 F.3d 1329, 1341 (Fed. Cir. 2008) (ruling party could not maintain declaratory judgment action seeking declaration of noninfringement where no claim of infringement had been made); *Benitec Australia, Ltd. v. Nucleonics, Inc*., 495 F.3d 1340, 1343 (Fed. Cir. 2007) (considering whether party could maintain counterclaims for noninfringement and unenforceability after dismissal of underlying infringement claims and determining counterclaim-plaintiff had not shown a continuing case or controversy after dismissal of infringement claims); *Lans v. Digit. Equip. Corp.*, 252 F.3d 1320, 1328 (Fed. Cir. 2001) (ruling that plaintiff who did not own patent could not sue for infringement of that patent); *Sanyo Elec. Co., Ltd v. Intel Corp*., No. CV 18-1709-RGA,

This case is a contract dispute that does not allege noninfringement or invalidity of any patent. Contrary to Intel's assertion that TSMC has not "placed the terms of the LOT Agreement in dispute," Br. 4; *see also* Br. at 11, TSMC has pled that Intel disagrees with TSMC on specific points regarding the LOT Agreement. *See, e.g.*, D.I. 2, ¶¶ 6 ("Daedalus and Intel claim the LOT Agreement does not cover the patents in the Daedalus lawsuits."), 29-30 ("Under the terms of the LOT Agreement, Intel granted TSMC a license . . . . both Intel and Daedalus have denied that TSMC has a license."), 93 ("Intel and Daedalus now contend the Assigned Patents were transferred on April 21, 2021."), 94 (explaining "Intel's rights to the Asserted Patents under the LOT Agreement allow TSMC" to engage in specific activity), 98 ("Intel and Daedalus assert that Intel's transfer of the Asserted Patents to Daedalus occurred on April 21, 2021, so the LOT Agreement does not cover the Asserted Patents."); 100 ("Faced with a dispute related to the LOT Agreement, TSMC comes to this Court seeking vindication of its rights with regard to the Asserted Patents and any other Assigned Patents that Intel transferred to Daedalus that are also Specified Patents under the LOT Agreement."). The Court should consider these allegations, and all the materials in TSMC's Complaint in the light most favorable to TSMC. *See Const. Party of Pennsylvania v. Aichele*, 757 F.3d 347, 358 (3d Cir. 2014) (explaining that for a 12(b)(1) motion filed before the answer, the court considers the "allegations of the complaint and documents referenced therein

---

2019 WL 1650067, at *10 (D. Del. Apr. 17, 2019) (finding party could not properly raise counterclaims of invalidity or noninfringement where opposing party did not own the patents); *S3 Graphics Co. v. ATI Techs. ULC*, No. 11-1298-LPS, 2015 WL 8999513, at *1 (D. Del. Dec. 11, 2015) (finding, in a Rule 12(c) motion, that no jurisdiction to determine whether party would have an implied license defense to specific infringement claims that had not been made); *CryoLife, Inc. v. C.R. Bard, Inc.*, No. CV 14-559-SLR, 2015 WL 1069397, at *3 (D. Del. Mar. 10, 2015) (finding party could not properly raise counterclaims of invalidity or noninfringement where opposing party did not own the patents); *see also Nike, Inc. v. Already, LLC*, 663 F.3d 89, 97 (2d Cir. 2011), *aff'd*, 568 U.S. 85 (2013) (ruling party could not maintain trademark cancellation claim after receiving covenant not to sue).

and attached thereto, in the light most favorable to the plaintiff." (quoting *In re Schering Plough Corp. Intron/Temodar Consumer Class Action*, 678 F.3d 235, 243 (3d Cir. 2012))).

That TSMC's license to four of the Transferred Patents defeats Daedalus's infringement case in the ITC Investigation and the Texas action does not convert this action into one seeking a declaratory judgment of noninfringement of those four patents. *See, e.g.*, Br. 10-11. TSMC holds a license irrespective of whether it practices the Transferred Patents, and the parties have a live dispute whether that license exists in view of the LOT Agreement and Intel's contracts with Daedalus.

Intel's remaining cases are similarly inapplicable. This case is not a challenge to a statute,[6] a dispute about ripeness,[7] one in which the parties do not dispute the applicability a contract,[8] nor

---

[6] *See* Br. 7; *Coffman v. Breeze Corp.*, 323 U.S. 316, 323 (1945) ("Appellant thus fails to assert any right of recovery at law in the present suit or to show that its remedy available at law is so inadequate as to entitle it to ask an equitable remedy," noting that appellant could not raise constitutional challenge to statute independent of a related claim for equitable or monetary relief).

[7] *See* Br. 10, 12; *U.S. Dep't of Treasury v. Off. Comm. of Unsecured Creditors of Motors Liquidation Co.*, 475 B.R. 347, 367 (S.D.N.Y. 2012) (ruling bankruptcy related claim was not ripe); *Bell Atl. Corp. v. MFS Commc'ns Co.*, 901 F. Supp. 835, 844 (D. Del. 1995) (ruling case seeking declaration of no antitrust liability was not ripe); *Grace Holdings, L.P. v. Sunshine Min. & Refin. Co.*, 901 F. Supp. 853, 859 (D. Del. 1995) (ruling party could not seek declaration to resolve perceived cloud on its right to redeem stock options at a date five years in the future).

[8] *See* Br. 7, 9; *BNSF*, 2012 WL 1355662, at *3 (finding, at summary judgment, no case or controversy where party had sold substantially all relevant assets related to Agreement, opposing party had alleged no claim related to remaining asserts, and parties did not dispute import of contract going forward "BNSF's argument that TVRR is a proper defendant in this action implies that, should BNSF prevail in its action for declaratory judgment, the terms of the 1992 Agreement will apply to freight traffic on TVRR's spur line. TVRR has not contended otherwise"); *Boehringer Ingelheim Vetmedica, Inc. v. Merial, Ltd.*, No. CIV. 3:09CV212 (AWT), 2010 WL 174078, at *9 (D. Conn. Jan. 14, 2010) (finding that party did not need a declaration "that the 2001 and 2004 License Agreements were not adversely affected by the '882 Assignment" because, based on the Court's construction of the agreements, there was no dispute that the subsequent owner of the patents had taken the patents subject to the assignment).

one in which one party had no interest in disputed proceeds.[9] The Court should reject Intel's procrustean attempts to fashion this case into one Intel finds easier to avoid.

**B.** **The Court Should Exercise Declaratory-Judgment Jurisdiction over this Case**

In a single-paragraph afterthought, Br. 13-14, Intel asks the Court to decline to hear this action even if it has jurisdiction. *Id.* TSMC respectfully asks the Court to reject Intel's invitation because hearing this case advances the objective of the Declaratory Judgment Act.

Not only do the parties have an active dispute regarding TSMC's license rights, *see supra* Section A.1; *see also, e.g.*, *Aetna*, 300 U.S. at 242 (finding jurisdiction where parties have "taken adverse positions with respect to their existing obligations"), neither the ITC Investigation nor Daedalus's Texas suit can resolve this dispute. Intel does not deny this case involves different patents—forty-six Transferred Patents—from the four in Daedalus's suits. *See* D.I. 27, ¶ 3 (identifying Transferred Patents); D.I. 2, ¶ 22 (identifying asserted patents).[10] Nor does Intel dispute this case involves different parties, with only this action including Intel, a party to each relevant contract. Intel accepts it cannot be joined to the ITC Investigation, Br. 1 n.1, and does not argue that TSMC could join it in the Texas action, as Intel accepts that the forum-selection clause applies to all controversies arising out of or related to the LOT Agreement, Br. 13 n.5. The LOT Agreement requires ██████████████████████████████

---

[9] *See* Br. 10; *Bennett v. CIT Bank, N.A.*, 482 F. Supp. 3d 1204, 1216 (N.D. Ala. 2020), *order corrected*, 544 F. Supp. 3d 1225 (N.D. Ala. 2021) ("Because the court has dismissed the Plaintiffs' conversion claim and the Plaintiffs admit that CIT no longer has any interest in the insurance proceeds at issue, no actual legal controversy exists between the Plaintiffs and CIT").

[10] As explained in TSMC's Complaint, the parties have a live controversy regarding these patents as neither Intel nor Daedalus have conceded TSMC's licenses to these patents. *See, e.g.*, D.I. 2, ¶¶ 29 (asserting TSMC's rights in patents beyond those asserted by Daedalus), 48 (same), 62 (same), 93 (asserting that, contrary to fact, "Intel and Daedalus now contend [all Transferred Patents] were transferred on April 21, 2021"), 100 (noting TSMC seeks "vindication of its rights with regard to the Asserted Patents and any other Assigned Patents that Intel transferred to Daedalus that are also Specified Patents under the LOT Agreement").

███████████████████████████████████████████████

███████████████████ and both Intel and TSMC ████████████████████████

████████████████████████████

Intel also does not dispute this case involves different issues from either the ITC Investigation or the stayed Texas suit. The ITC Investigation raises issues of infringement, invalidity, importation, domestic industry, and public interest. *See generally* D.I. 4, Ex. C. The Texas litigation involves issues of infringement, invalidity, equitable relief, and damages. *See generally* D.I. 4, Ex. D. This action, in contrast, only seeks a determination of whether Intel granted TSMC a license to the Transferred Patents, which involves (1) confirming that the Transferred Patents are licensed to TSMC under the LOT Agreement; (2) confirming, consonant with Intel's and Daedalus's prelitigation representations, that neither the April 2021 Patent Agreement nor the April 26, 2021, Assignment assigned the Transferred Patents to Daedalus; and (3) confirming the June 3, 2022, Assignment transferred those patents to Daedalus and effectuated the license in the LOT Agreement.

Until this Court resolves these issues, TSMC will continue to face uncertainty over its license rights to the Transferred Patents, potentially limiting exploration of new advances for the U.S. market by TSMC and its customers, including U.S. universities and U.S. technology companies. *See* D.I. 26, Ex. 3 at 4-5 (identifying TSMC customers). TSMC faces the risk of additional suits. *See* D.I. 26, Ex. 5 at 1 (asserting TSMC infringes "at least" the patents asserted by Daedalus). Hearing this case and resolving these issues "would settle the legal relations in dispute and afford relief from uncertainty or insecurity." *See SanDisk Corp.*, 480 F.3d at 1382-83 (citation omitted). The Court should hear this case. Intel's desire to avoid this action is not a basis for the Court to decline jurisdiction. *See, e.g.*, *Capo*, 387 F.3d at 1355.

## VI.     CONCLUSION

TSMC respectfully requests the Court deny Intel's motion.

Dated: March 27, 2023

McCARTER & ENGLISH, LLP

*/s/* Daniel M. Silver
Daniel M. Silver (#4758)
Alexandra M. Joyce (#6423)
Renaissance Centre
405 N. King Street, 8th Floor
Wilmington, Delaware 19801
(302) 984-6300
dsilver@mccarter.com
ajoyce@mccarter.com

Of Counsel:
Mareesa Frederick (*admitted pro hac vice*)
E. Robert Yoches (*admitted pro hac vice*)
Cara E. Regan (*admitted pro hac vice*)
FINNEGAN, HENDERSON, FARABOW,
GARRETT & DUNNER LLP
901 New York Avenue, NW
Washington, DC 20001
Telephone: 202.408.4000
Facsimile: 202.408.4400
mareesa.frederick@finnegan.com
bob.yoches@finnegan.com
cara.regan@finnegan.com

Gary C. Ma (*admitted pro hac vice*)
FINNEGAN, HENDERSON, FARABOW,
GARRETT & DUNNER LLP
Stanford Research Park
3300 Hillview Avenue
Palo Alto, CA 94304-1203
Telephone: 650.849.6600
Facsimile: 650.849.6666
gary.ma@finnegan.com

Clement J. Naples (*admitted pro hac vice*)
LATHAM & WATKINS LLP
1271 Avenue of the Americas
New York, NY 10020
Telephone: (212) 906-1200
Facsimile: (212) 751-4864

Bert C. Reiser (*admitted pro hac vice*)
Susan Y. Tull (*admitted pro hac vice*)
LATHAM & WATKINS LLP
555 Eleventh Street, NW Suite 1000
Washington, DC 20004
Telephone: (202) 637-2200
Facsimile: (202) 637-2201

Dale Chang (*admitted pro hac vice*)
LATHAM & WATKINS LLP
330 North Wabash Avenue, Suite 2800
Chicago, IL 60611
Telephone: (312) 876-7700
Facsimile: (312) 993-9767

Thomas W. Yeh (*admitted pro hac vice*)
LATHAM & WATKINS LLP
355 South Grand Avenue, Suite 100
Los Angeles, CA 90071-1560
Telephone: (213) 485-1234
Facsimile: (213) 891-8763

Amit Makker (*admitted pro hac vice*)
LATHAM & WATKINS LLP
505 Montgomery Street, Suite 2000
San Francisco, CA 94111-6538
Telephone: (415) 391-0600
Facsimile: (415) 395-8095
Email: tsmcitc1336.lwteam@lw.com

*Attorneys for Plaintiff Taiwan Semiconductor Manufacturing Company Limited*

## CERTIFICATE OF SERVICE

The undersigned counsel hereby certifies that true and correct copies of the foregoing

document were caused to be served on March 27, 2023 on the following counsel in the manner

indicated below.

### VIA EMAIL:

Brian E. Farnan (#4089)
Michael J. Farnan (#5165)
FARNAN LLP
919 n. Market Street, 12th Floor
Wilmington, DE 19801
bfarnan@farnanlaw.com
mfarnan@farnanlaw.com

Michael T. Renaud
Adam S. Rizk
Suparna Datta
MINTZ LEVIN COHN FERRIS GLOVSKY & PEPEO PC
One Financial Center
Boston, Massachusettes 02111
mtrenaud@mintz.com
arizk@mintz.com
sdatta@mintz.com

Peter F. Snell
MINTZ LEVIN COHN FERRIS GLOVSKY & PEPEO PC
Chrysler Center
666 Third Avenue
New York, NY 1017
pfsnell@mintz.com

*Counsel for Defendant Deaedulus Prime LLP*

ME1 44369619v.1

Jack B. Blumefeld (#1014)
Jeremy A. Tigan (#5239)
Jennifer Ying (#5550)
Anthony D. Raucci (#5948)
MORRIS, NICHOLS, ARSHT & TUNNELL LLP
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
jblumenfeld@morrisnichols.com
jtigan@morrisnichols.com
jying@morrisnichols.com
araucci@morrisnichols.com

*Counsel for Defendant Intel Corp.*

Dated:  March 27, 2023                    */s/ Daniel M. Silver*
                                          Daniel M. Silver (#4758)